# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **GUY ANTHONY SAVAGE and** | ) | **Case No. 14-00540 TOM 7** |
| **TAMELA SUE SAVAGE,** | ) | |
| | ) | |
| Debtors. | ) | |

_____

| | | |
|---|---|---|
| **834 GOLDEN GATE LANE HOLDINGS,** | ) | |
| **LLC, 2625 BELVEDERE DRIVE** | ) | |
| **HOLDINGS, LLC, AND 2000 NORTH** | ) | |
| **MERIDIAN ROAD HOLDINGS, LLC,** | ) | |
| **EACH ACTING BY AND THROUGH ITS** | ) | |
| **SPECIAL SERVICER, CWCAPITAL** | ) | |
| **ASSET MANAGEMENT LLC, AND** | ) | |
| **CWCAPITAL ASSET MANAGEMENT,** | ) | |
| **LLC, IN ITS INDIVIDUAL CAPACITY,** | ) | |
| | ) | |
| Plaintiffs, | ) | **A.P. No. 14-00060 TOM** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **GUY ANTHONY SAVAGE and** | ) | |
| **TAMELA SUE SAVAGE,** | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MEMORANDUM OPINION

This adversary proceeding came before the Court on October 13, 2015, for a trial on the

Complaint filed by 834 Golden Gate Lane Holdings, LLC, 2625 Belvedere Drive Holdings,

LLC, and 2000 North Meridian Road Holdings, LLC, each acting by and through its special

servicer, CWCapital Asset Management, and CWCapital Asset Management, LLC, in its

individual capacity (collectively, the "Plaintiffs") against Guy Anthony Savage and Tamela Sue

Savage, the Defendants/Debtors.  Appearing before the Court were Matthew M. Cahill and

Matthew T. Murname, attorneys for the Plaintiffs, and David B. Anderson, attorney for the

Defendant. This Court has jurisdiction pursuant to 28 U.S.C. sections 1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, as Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. section 157(b)(2)(I) and (J).[2] This Court has considered the pleadings, arguments, evidence, testimony, and the law, and finds and concludes as follows.[3]

## FINDINGS OF FACTS[4]

Plaintiff 834 Golden Gate Lane Holdings, LLC ("Golden Gate"), is the owner of Nob Hill Apartments; 2625 Belvedere Drive Holdings, LLC ("Belvedere"), is the owner of Belvedere Apartments; and 2000 North Meridian Road Holdings, LLC ("Meridian") is the owner of Meridian Place Apartments. Each of these LLCs, acting through their Special Servicer CWCapital Asset Management LLC ("CWC") (the LLCs and CWC, collectively "Plaintiffs"), entered into Management Agreements with Investment Realty, LLC ("IR"), owned by Guy Savage ("Mr. Savage"), to act as manager for these properties. According to the Complaint, IR was to provide operating reports and disburse funds to the Plaintiffs on a monthly basis pursuant to the Management Agreements. The Plaintiffs allege that the operating reports supplied by IR indicated that Mr. Savage should have disbursed funds to them, but instead, Mr. Savage

---

[1] The General Order of Reference Dated July 16, 1984, as Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. § 157(b)(2)(I) and (J) provide as follows:

> (b)(2)Core proceedings include, but are not limited to-
> . . .
> (I) determinations as to the dischargeability of particular debts;
> (J) objections to discharges[.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

deposited the money into accounts belonging to his own personal businesses then wrote checks drawn on those accounts to Mrs. Savage. The Plaintiffs contend that Mr. Savage represented to them that funds due to Meridian had been wired but not received due to glitches and that he would re-wire the funds; however, the funds were never received by the Plaintiffs. According to the Plaintiffs, neither Belvedere nor Nob Hill received disbursements from IR. While the Plaintiffs admit that Tamela Savage ("Mrs. Savage") was not a party to the Management Agreements, they contend that Mrs. Savage worked with Mr. Savage to divert the Plaintiffs' funds for the Savages' personal use.

The Plaintiffs filed a suit against Mr. Savage, IR, and others in the Circuit Court of Jefferson County, Alabama on August 29, 2013. Mrs. Savage was not originally named as a defendant in that proceeding although she was later added. *See* Amended Complaint, Exh. 1 to Claim 13 filed by Belvedere; Amended Complaint, Exh. 1 to Claim 15 filed by Meridian; and Amended Complaint, Exh. 1 to Claim 16 filed by Golden Gate. On October 17, 2013, the state court judge signed a consent order entered into by the Plaintiffs and Mr. Savage, Mrs. Savage, IR and Power Force Apparel, LLC ("Power Force")[5] with regard to a Motion for Pre-Judgment attachment filed by the Plaintiffs. Thereafter, on January 9, 2014, the Plaintiffs filed a motion to hold Mr. Savage and Power Force in contempt of that order, and supplemented the motion on February 18, 2014. The Savages filed their bankruptcy case on February 19, 2014.

The Plaintiffs filed this adversary proceeding on May 30, 2014. Prior to the start of trial on October 13, 2015 the parties informed the Court that the Plaintiffs had reached a settlement with Mr. Savage and as a result he would consent to a judgment under section 523 declaring the

---

[5] Power Force is another business belonging to Mr. Savage.

3

debt owed to the Plaintiffs to be nondischargeable.[6]  The trial against Mrs. Savage took place as scheduled.

Mrs. Savage testified that she majored in accounting and holds a bachelor of science in business as well as a MBA degree.  She further testified that she obtained a CPA designation in the 1980s and worked as an accountant after graduating from college.  Mrs. Savage testified that IR is her husband's business, and at first stated that she had never worked for the company, but then corrected her answer to say she had worked for the business when it was first started until Mr. Savage hired Becky Rosato, who worked for Mr. Savage until late summer 2013 around the time that the state court lawsuit was filed.  When Plaintiffs' counsel asked about her "Linkedin" page that reflects she was employed by IR from 2008-2014, she stated that those dates were not accurate.  Mrs. Savage testified that Power Force was also a business of her husband's.  She explained that she helped out with Power Force after its bankruptcy filing by preparing schedules, and did other things when needed such as working the store or moving inventory.[7] She testified that she has no ownership in her husband's businesses and had no involvement with the businesses' books and records after Becky took over until Becky quit in 2013.

Mrs. Savage testified that the family had monthly expenses of $26,000 for years and had been able to pay them.[8]  She further testified that she prepared the Savages' bankruptcy schedules ("Schedules") and Statement of Financial Affairs ("SOFA"), which were accurate at the time of filing to the best of her ability.[9]  The SOFA reflects that Mrs. Savage had no income

---

[6] *See* Proc. 42, Final Judgment.

[7] According to the Court's CM/ECF records Power Force Apparel, LLC filed a Chapter 11 bankruptcy case on February 20, 2014.  The case converted to Chapter 7 on March 18, 2014.

[8] Schedule J reflects monthly expenses of $22,820; however, according to Mrs. Savage, the $3,810 on the Detailed Expense Attachment to Schedule J is in addition to the total monthly expenses listed on Schedule J itself.

[9] The Savages filed their original Statement of Financial Affairs on February 25, 2014 and an amended SOFA on March 5, 2015.  There are no differences between the original and the amended SOFA with regard to income (question 1) or transfers of property (question 10).  The March 5, 2015 amended SOFA may hereafter be referenced as the "filed SOFA."

4

in 2012 or in 2013. Her income for 2014 is listed as $0, but the under the column entitled "Source" is a notation reflecting "2014 YTD: wife earned $575.00 not paid until 2/28/14; plus $15,000 paid by Autumn Brook Apts. since January, 2014."[10] As to Mr. Savage, the SOFA reflects no income in 2012, $80,000.00 from "husband Business" in 2013, and no income year-to-date in 2014. When Plaintiffs' counsel asked Mrs. Savage if the income reported on the March 5, 2014 SOFA was accurate she indicated that the SOFA had since been revised. Mrs. Savage stated that at the time she prepared the Schedules she had not known their income for 2012 and 2013 because they had not filed tax returns for those years.[11] She testified that Debtors' Schedules were accurate at the time of filing to the best of her ability, but they were prepared in a hurry. It is her contention that she had initially left some information off of the Schedules because she was not sure what to include. Mrs. Savage pointed out that she is not an attorney and does not know the legal aspects of bankruptcy, and thus the Savages hired bankruptcy counsel and made revisions to the Schedules and SOFA. According to Mrs. Savage it was after she had been deposed that she made the revisions in order to include information that she learned should have been disclosed. She stated that she provided the changes to her bankruptcy counsel but she did not know whether the revised documents had been filed. However, a review of the Court's CM/ECF system shows that the SOFA was not further amended after March 5, 2014. A copy of the unfiled, revised SOFA (which may hereafter be referenced as the "unfiled SOFA") was admitted into evidence as Defendants' Exhibit A. The unfiled SOFA contained typed and handwritten changes, notes and additional information.[12]

---

[10] Autumn Brook Apartments is another of Mr. Savage's businesses.
[11] Mrs. Savage believes the 2011 tax return was filed but the accountant who prepared it would not give it to the Savages because they owed him money.
[12] This unfiled SOFA raises additional questions or issues not raised or answered by Plaintiffs or Defendants at trial: 1) why is some of the typed information included on this version but not on the filed SOFA, and 2) why are the pages covering questions 2, 3, and 4 of the SOFA missing from Defendants' Exhibit A? However, explanations or answers to these questions likely would not have changed the outcome of this adversary proceeding.

5

Mrs. Savage alleged this version was provided to her then-attorney.[13]  Her testimony on this issue is less than credible.  It may be that Mrs. Savage made changes, but what is clear is that the exhibit offered at trial was not filed into the Court's ECF system.  Further, it is unclear when the changes might have been made.  This unfiled SOFA does reflect additional information, some handwritten and some typed; however, since it was not filed into ECF and the Court cannot be sure when it was edited, it is not helpful to Mrs. Savage's defense nor harmful or prejudicial to the Plaintiffs' case.  It does demonstrate that the filed SOFA was incomplete and/or inaccurate.

Plaintiffs' counsel questioned Mrs. Savage about various checks she received primarily from Mr. Savage's businesses that were not disclosed on the SOFA.  Mrs. Savage admitted she received over $200,000 in 2012 but explained that the money she received did not count as income; instead, the funds "were my husband's distributions of his earnings in his company." She further explained that that there is a difference between distributions and income, and that because of the tax structure of his companies Mr. Savage was not paid a salary.  When asked if it was her view that she did not have to disclose distributions on a SOFA she replied that she did not think so since the SOFA is "based off income."  Mrs. Savage testified that the money she received from the various checks was used to pay the household expenses.

According to Mrs. Savage it was not until after the Savages' bankruptcy filing that she learned Meridian, Belvedere, and Nob Hill were properties managed by her husband on behalf of CWC.  Mrs. Savage testified that she had received at least one check in the amount of $5,000 from Meridian but never asked her husband why she received it since she assumed it was a distribution from a property that he owned.  Mrs. Savage testified that she did not include money

---

[13] Mr. Fred Garfield was counsel of record for Mr. and Mrs. Savage and filed the bankruptcy case on their behalf. Mr. Garfield has been a practicing attorney before this Court, and has been familiar to this Court, for 24 years.  This Court is unaware of any similar circumstance or accusation that he failed to file any document provided to him by a debtor.

6

received from Meridian as income on the SOFA because, at the time, she did not know Meridian did not belong to her husband and thus considered funds received to be distributions. However, upon questioning, Mrs. Savage admitted that the state court litigation involving the Plaintiffs had been ongoing since September 2013 and thus she knew in February 2014 when the Savages' bankruptcy case was filed that Meridian did not belong to her husband. Mrs. Savage testified that even though Meridian is not her husband's company she still does not consider the money received from Meridian to be income, but instead a loan since she did nothing to earn it.

Counsel for Plaintiffs questioned Mrs. Savage about checks from jewelers deposited into her Regions Bank account as evidenced in the September 19, 2013 through October 14, 2013 bank statement. She explained that when the Plaintiffs removed Mr. Savage as manager of their properties the family had no income so she began to sell some of her personal things. One check deposited during this time was received from Isbell Jewelers, payable in the amount of $13,000.00. Mrs. Savage stated that she sold jewelry to Isbell Jewelers but she did not include the transfer in the SOFA because she had prepared it quickly and did not understand what information the SOFA was asking for. She further stated that she included the sale on the unfiled SOFA prepared after the 2004 exam. Another check from Isbell Jewelers in the amount of $12,000 was deposited during this time. Mrs. Savage likewise stated that the check was not disclosed on the SOFA but was included on the unfiled SOFA. Another deposit into the account was a check from Tarrytown Coin & Jewelry Exchange, Inc. ("Tarrytown") payable in the amount of $4,000. Mrs. Savage explained that she received the money from Tarrytown in exchange for a Cartier watch. It was her testimony that she did not determine the value of the watch prior to the transaction but accepted $4,000 for it because that is what Tarrytown offered her. Mrs. Savage considered this transaction a loan, as she believes she had one year to repay

7

Tarrytown and recover the watch; however, she did not repay the loan and did not recover the watch. She stated she did not include this transaction on the Schedules or SOFA because the loan was not due to be paid back at the time they were prepared.[14]

Plaintiffs' counsel asked Mrs. Savage about a property that she owned with Mr. Savage on Mill Creek Circle that they rented out in 2012-2013. Mrs. Savage indicated that they received $1,000 per month in rent but it was not included as income on the SOFA because the rent was offset by the mortgage payments. Mrs. Savage did include the mortgage payment as an expense on Schedule J, however, because at the time she prepared the Schedules the tenants were moving out of the house and the Savages were moving in.

In addition to questioning Mrs. Savage about information that had been omitted from the Schedules and SOFA, Plaintiffs' counsel inquired about her knowledge of her husband's businesses and the efforts she made to obtain information prior to the bankruptcy filing. According to Mrs. Savage she never asked her husband about his business affairs. Mrs. Savage admitted that at a deposition she had seen her husband's personal financial statement dated 2012, purportedly prepared to obtain a loan. She claimed that she has not reviewed the financial statement, does not know if it is accurate, and that she never asked her husband about it because it was "not relevant" to her. Plaintiffs' counsel inquired about $1,000,000 cash reflected on the financial statement[15] and Mrs. Savage responded that it could have belonged to one of her

---

[14] Plaintiffs' counsel also asked Mrs. Savage about a $350,000 check she received from MW Industrials, Inc. Mrs. Savage testified that she had $350,000 in a bank account but the bank would not let her withdraw it because the account was too new, so she borrowed the money from MW Industrials. Mrs. Savage stated this transaction was not disclosed as income on the SOFA because she paid the money back.

[15] In a state court action brought by P.B. Surf, Ltd. against IR and others, Mr. Savage filed an accounting of $1,000,000 that had been deposited into one of Mrs. Savage's accounts. *See* Plaintiffs' Exh. 16. It is not clear if the Plaintiffs contend that the $1,000,000 deposited into her account is the same $1,000,000 referenced on Mr. Savage's personal financial statement. It is also not clear what connection, if any, the Plaintiffs make between the $1,000,000 deposited into Mrs. Savage's account, the $1,000,000 reflected on Mr. Savage's personal financial statement, and the money that Plaintiffs assert should have been wired to Meridian but apparently was not. Regardless, Plaintiffs' counsel did not directly question Mrs. Savage as to her receipt of or the disposition of the $1,000,000, if he

husband's companies. According to her, cash belonging to one of the companies would be her husband's personal cash if he were the sole owner of the business. Mrs. Savage asserted that she had made no efforts after her 2004 exam to determine their income for 2012 and 2013 because the Trustee had their computer server and, to her knowledge, her husband did not keep paper records. She claims that she does not know if her husband had a life insurance policy and never asked him about it because it was "not relevant." Although Mrs. Savage knew that they owned securities or stocks at one time, she stated that she did not know if they owned the securities in 2012 when her husband's financial statement was prepared and that she did no research to determine when they were owned. Mrs. Savage testified that her husband may have had a retirement account but she does not know for certain and did not ask him about it after the 2004 exam; she considered it "irrelevant" since he does not have the account now. When asked how she knows Mr. Savage does not have a retirement account now, she responded that they have no money now.

Mr. Savage testified that around every 90 days he would discuss with Mrs. Savage the money needed for household expenses, but he never talked to her about his business affairs. He stated that he had never discussed his 2012 personal financial statement with her. According to Mr. Savage, his input in preparing the Schedules included estimating his 2012 income and estimating property values, but he was not involved in making revisions to the SOFA because he had "checked out" by that time.

## CONCLUSIONS OF LAW

### NONDISCHARGEABILITY UNDER SECTION 523

---

questioned her at all. The accounting, admitted into evidence as Plaintiffs' Exhibit 16, reflects the disposition of approximately $650,000 of the funds, leaving approximately $350,000 unaccounted for. Plaintiffs' counsel did briefly question Mr. Savage about the disposition of the $350,000, who testified that he did not recall what happened to the funds.

9

Section 523 of the Bankruptcy Code outlines exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. See *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir. 1994). A creditor seeking to except a debt from discharge bears the burden of proof as to each particular element of nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). The Plaintiffs allege that the debt owed to them by Mrs. Savage is nondischargeable pursuant to sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

## 11 U.S.C. § 523(a)(2)(A)

According to the Eleventh Circuit Court of Appeals, "the fraud exceptions to discharge exist to punish the debtor for committing fraud." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993) (citation omitted). Section 523(a)(2)(A), one of the fraud exceptions to discharge, provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
> ...
>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>       (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). To obtain a determination that section 523(a)(2)(A) bars a specific debt from discharge, the creditor must prove that: 1) the debtor received or obtained money or property from the plaintiff, which creates a debt or obligation to the plaintiff; 2) the money or property was obtained and the debt incurred by either false pretenses, a false representation, or actual fraud; 3) the false pretense, false representation, or actual fraud was either done by the

10

debtor knowingly or in reckless disregard of the truth; 4) the debtor's conduct was with the intention to deceive, with the intention that the plaintiff detrimentally rely, or with the intention that the plaintiff be given a false impression; 5) the plaintiff justifiably relied on the debtor's conduct or misrepresentation; and 6) the plaintiff suffered damages as a result of the debtor's actions. *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998). *See also Sears v. United States*, 533 Fed. App'x 941, 945 (11th Cir. 2013); *Taylor v. Wood (In re Wood)*, No. 07-10282, 2007 WL 2376788, at *1 (11th Cir. Aug. 21, 2007). A plaintiff must establish all elements of section 523(a)(2)(A) before the debt will be excepted from discharge.

Because "false pretenses," "false representation" and "actual fraud" are placed in the disjunctive, Congress intended that any one of these is sufficient to establish nondischargeability under § 523(a)(2)(A). False pretenses are "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor." *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996). *See also FCC Nat'l Bank v. Gilmore (In re Gilmore)*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998). While a false pretense generally pertains to implied misrepresentations or conduct creating a false impression, "false representation involves an expressed misrepresentation by a debtor." *Castro v. Zeller (In re Zeller)*, 242 B.R. 84, 87 (Bankr. S.D. Fla.1999). The Eleventh Circuit has determined the elements of actual fraud to be that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Bilzerian*, 153 F.3d at 1281 (11th Cir. 1998). See also

*Field v. Mans*, 516 U.S. 59, 73-75, 116 S.Ct. 437, 445-446 (1995) (holding that section 523(a)(2)(A) requires justifiable, but not reasonable, reliance).

This count against Mrs. Savage may be quickly disposed of. In their Complaint, the Plaintiffs allege that Mr. Savage made false representations; however, there are no allegations of false pretenses, false representations, or actual fraud with regard to Mrs. Savage. It is undisputed that Mrs. Savage is not a party to any of the Management Agreements between the Plaintiffs and IR. There is no evidence that Mrs. Savage made any representations to the Plaintiffs at all, false or otherwise, or that she created misleading circumstances that induced Plaintiffs to transfer property to her. Any debt owed by Mrs. Savage to the Plaintiffs is not excepted from discharge under section 523(a)(2)(A).

## 11 U.S.C. § 523(a)(2)(B)

The Plaintiffs also seeks to have the debt excepted from discharge under section 523(a)(2)(B) which addresses fraud involving a writing. Section 523(a)(2)(B) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
> ...
>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> ...
>        (B) use of a statement in writing--
>            (i) that is materially false;
>            (ii) respecting the debtor's or an insider's financial condition;
>            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>            (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B). "A statement is materially false for purposes of section 523(a)(2)(B) if it paints a substantially untruthful picture of financial conditions by misrepresenting

12

information of the type that would normally affect the decision to grant credit." *Delta Community Credit Union v. Greene (In re Greene)*, BK No. 13-65956-MGD, AP No. 13-05326, 2013 WL 6911376, at *2 (Bankr. N.D. Ga. 2013) (citation omitted). Writings that concern "the debtor's or an insider's financial condition" are "financial-type statements including balance sheets, income statements, statements of changes in financial position, or income and debt statements that proved what may be described as the debtor or insider's net worth, overall financial health or equation of assets and liabilities." *Knotts v. Williams (In re Willams)*, AP No. 02-00263, BK No. 02-05988 (Bankr. N.D. Ala. Sept. 11, 2003) (quoting *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 615 (Bankr. C.D. Utah 2002)). The debt will be dischargeable unless all elements are met. *Miller*, 39 F.3d at 304.

This count with regard to Mrs. Savage likewise requires little discussion. According to their Complaint the written statements on which the Plaintiffs allegedly relied are the monthly operating reports of the properties managed by IR. These operating reports are not "financial-type statements" regarding Mrs. Savage's financial health or assets and liabilities. The Plaintiffs did not identify at trial any other document that could be considered a writing respecting her financial condition. Any debt owed by Mrs. Savage to the Plaintiffs is not due to be excepted from discharge under section 523(a)(2)(B).

**11 U.S.C. § 523(a)(4)**

Section 523(a)(4) provides that an individual debtor is not discharged for debts resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This section is divided into two disjunctive sections. The first deals with fraud or defalcation while acting in a fiduciary capacity. The second deals with embezzlement or larceny even when not acting in a fiduciary capacity. Each will be discussed in turn.

13

### a. Fraud or defalcation while acting in a fiduciary capacity

For a debt to be to be determined nondischargeable under the first half of § 523(a)(4), two elements must be proven: 1) a fiduciary relationship existed and 2) the debtor committed fraud or defalcation while acting in his capacity as a fiduciary. 11 U.S.C. § 523(a)(4). "Fiduciary capacity" is not defined in the bankruptcy code. *Allen v. Scott (In re Scott)*, 481 B.R. 119, 180 (Bankr. N.D. Ala. 2012). This Court has previously explained:

> While the existence of a fiduciary relationship under § 523(a)(4) is determined by federal law, state law is relevant to the inquiry. *See, e.g., Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371-72 (10th Cir. 1996). Federal law narrowly defines the concept of "fiduciary relationship" to include only relationships involving an express or technical trust. *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993). Implied, resulting and constructive trusts do not fall within the confines of this section. *Id.* If state law imposes the duties of a trustee on a party, the party is a "fiduciary" for the purposes of § 523(a)(4). *Id.* at 954. The fact that a relationship is characterized as fiduciary under state law does not necessarily mean that it is a fiduciary relationship within the meaning of § 523(a)(4). The traditional meaning of fiduciary under state law — loyalty, good faith and fair dealing — is too broad for the purposes of this section. Only a subset of fiduciary obligations is encompassed in the word "fiduciary" for purposes of § 523(a)(4).

*Hosey v. Hosey (In re Hosey)*, 355 B.R. 311, 321-22 (Bankr. N.D. Ala. 2006). There was no express or technical trust relationship between Mrs. Savage and the Plaintiffs, and thus no fiduciary relationship existed.

### b. Embezzlement and larceny

This Court has also addressed what qualifies as embezzlement and larceny for purposes of section 523(a)(4):

> Section 523(a)(4) also excepts from discharge those debts resulting from embezzlement or larceny. A leading treatise on bankruptcy explains that in § 523(a)(4), the phrase "while acting in a fiduciary capacity" does not qualify the words "embezzlement" or "larceny." *See* 4 Collier on Bankruptcy ¶ 523.10[2] at 523-76 (Alan N. Resnick, et al., eds., 15th ed. rev. 2004). Therefore, any debt resulting from embezzlement or larceny, even where the debtor was not acting in a fiduciary capacity, falls within the exception to discharge under this clause. For purposes of § 523(a)(4), embezzlement is defined as "the fraudulent appropriation

14

> of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Richard v. Dougherty (In re Dougherty)*, 179 B.R. 316, 320 (Bankr. M.D. Fla. 1995). Similarly, for the purposes of § 523(a)(4) larceny is defined as "a felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *Weinreich v. Langworthy (In re Langworthy)*, 121 B.R. 903, 907-08 (Bankr. M.D. Fla. 1990)(quoting BLACK'S LAW DICTIONARY 602 (6th ed. 1990)). Both embezzlement and larceny require fraudulent intent or deceit by the Debtor. *See Bennett v. Wright (In re Wright)*, 282 B.R. 510 (Bankr. M.D. Ga. 2002).

*Hosey*, 355 B.R. at 323-24. According to the evidence before this Court, Mrs. Savage was never entrusted with or lawfully received money belonging to the Plaintiffs and thus the Court does not find that Mrs. Savage committed embezzlement. With regard to larceny, the Plaintiffs have not presented sufficient evidence from which the Court could conclude that Mrs. Savage feloniously took funds from the Plaintiffs with the requisite fraudulent intent. The Court finds that the debt should not be excepted from discharge under section 523(a)(4).

## 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" shall not be discharged. 11 U.S.C. § 523(a)(6). In the Eleventh Circuit, "willful" means "'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" *Walker*, 48 F.3d at 1163 (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)). For an injury to be willful, the debtor must have "commit[ed] an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Walker*, 48 F.3d at 1164-65. Malice is defined as "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Id*. at 1164 (quoting *Ikner*, 883 F.2d at 991). "Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Wolfson v. Equine Capital*

Case 14-00060-TOM    Doc 48    Filed 03/04/16    Entered 03/04/16 14:55:58    Desc Main
Document    Page 15 of 27

*Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir. 1995). However, "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S. Ct. 151, 153, 79 L. Ed. 393 (1934).

The Plaintiffs contend that the deposit of their funds into Mrs. Savage's accounts and her subsequent use of the funds qualify as conversion on the part of Mrs. Savage. The majority of funds received by Mrs. Savage came from her husband's business accounts, although Mrs. Savage acknowledged she received a check from the Meridian operating account. However, Mrs. Savage testified that she had no involvement with her husband's businesses, and that she did not know which businesses her husband owned and which ones he managed on behalf of the Plaintiffs. The Plaintiffs did not prove otherwise. Thus, although the funds deposited into Mrs. Savage's accounts may have ultimately belonged to the Plaintiffs, there is not sufficient evidence from which the Court could conclude that Mrs. Savage was aware the money may not have belonged to her husband. Considering that exceptions to discharge are to be construed in favor of a debtor, under the circumstances of this case, a conversion of Plaintiffs' funds by Mrs. Savage, if any conversion occurred, was without willfulness or malice.[16] The debt is not nondischarageable under section 523(a)(6).

## DENIAL OF DISCHARGE UNDER SECTION 727

The Bankruptcy Code requires that debtors receive a discharge unless one of the statutory exceptions found in section 727 is proved. The Plaintiffs in this case allege that Mrs. Savage should be denied her discharge pursuant to sections 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), and

---

[16] It is not necessary for the Court to decide whether or not Mrs. Savage actually converted the Plaintiffs' funds since the Court finds that a conversion, if any, was not done willfully and maliciously.

(a)(5). Denial of discharge is a harsh remedy, one that should be exercised only under extreme circumstances. To further the "fresh start" objective of the Bankruptcy Code, the statute should be strictly construed against the party objecting to discharge and in the light most favorable to the debtor. *See Overly v. Guthrie (In re Guthrie)*, 265 B.R. 253, 263 (Bankr. M.D. Ala. 2001); *Behrman Chiropractic Clinics, Inc. v. Johnson (In re Johnson)*, 189 B.R. 985, 992 (Bankr. N.D. Ala. 1995). The plaintiff has the burden of proof by a preponderance of the evidence on a complaint objecting to discharge. *Morrissy v. Dereve (In re Dereve)*, 381 B.R. 309, 324 (Bankr. N.D. Fla. 2007).

## Section 727(a)(2)(A) and (B)

Section 727(a)(2) of the Bankruptcy Code is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets. Specifically, § 727(a)(2) provides:

> (a) The court shall grant the debtor a discharge, unless--
> . . .
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>> (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A)-(B). The Plaintiffs' counts under both section 727(a)(2)(A) and 727(a)(2)(B) focus primarily on Mrs. Savage's alleged concealment of funds. For discharge to be denied under section 727(a)(2), a plaintiff must prove: "(1) a concealment of property occurred; (2) the concealment was of debtor's property [or property of the estate under section 727(a)(2)(B)]; (3) the concealment was made within one year prior to the petition date [or made after the bankruptcy filing date under section 727(a)(2)(B)], and (4) the concealment was done

17

with the intent to hinder, delay, or defraud a creditor or the trustee." *Dereve*, 381 B.R. at 325. "[C]oncealment . . . includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known." *Buckeye Retirement Co. v. Swegan (In re Swegan)*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008). The property concealed must be property belonging to the debtor or the estate; if the property belongs to another person or entity it is not "property of the debtor" or "property of the estate" for purposes of section 727(a)(2). *See Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 299 (Bankr. E.D. Pa. 2006). The requisite intent may be inferred based on circumstantial evidence or on the facts and circumstances of the particular case. *James v. Tipler (In re Tipler)*, 360 B.R. 333, 340 (Bankr. N.D. Fla. 2005). Numerous omissions from the schedules and statement of financial affairs may signify a reckless disregard for the truth, which in turn is "generally recognized as the equivalent of fraud." *Behrman Chiropractic Clinics*, 189 B.R. at 994 (Bankr. N.D. Ala. 1995). Additionally, fraudulent intent may be indicated by "badges of fraud":

> (1) lack of adequate consideration for the property transferred or concealed . . . ;
> (2) a family or close relationship between the parties . . . ;
> (3) retention of possession for use and benefit . . . ;
> (4) financial condition of the transferor or concealor before and after the transfer or concealment . . . ;
> (5) cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit . . . ; and
> (6) general chronology and timing of events.

*Dereve*, 381 B.R. at 326. An inference of fraudulent intent may be drawn even though not all of the badges of fraud are present. *Los Alamos Nat'l Bank v. Wreyford (In re Wreyford)*, 505 B.R. 47, 59 (Bankr. D.N.M. 2014). The badges of fraud do not have to be given equal weight. *Id.*

As a basis for their counts under 727(a)(2)(A) and (B), the Plaintiffs allege that Mrs. Savage concealed funds belonging to the Plaintiffs by depositing the funds into her accounts and failing to disclose the same. The allegation itself reveals why these counts must fail - Plaintiffs

18

contend only that Mrs. Savage has concealed their property and not any of her own. Mrs. Savage's discharge is not due to be denied under section 727(a)(2)(A) or (B).

**11 U.S.C. § 727(a)(3)**

Section 727(a)(3) provides:

(a) The court shall grant the debtor a discharge, unless--
. . .
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). This section is intended to prevent the discharge of a debtor who fails to maintain or preserve books or records. The application of §727(a)(3) requires a two-tiered analysis. First, the court must determine whether the debtor has maintained adequate books and records from which his or her "financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). Second, if the debtor failed to maintain adequate records the court must determine whether such failure was "justified under all of the circumstances of the case." *Id.*

The initial burden of proof is on the plaintiff to show that the debtor does not have sufficient books and records from which to satisfactorily ascertain the debtor's financial situation and business transactions. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984). Once proven, the burden shifts to the debtor to explain the lack of financial records in a satisfactory manner. *Id.* The explanation must consist of more than just the debtor's assertion that the records no longer exist or are no longer available. *Christy, et al. v. Kowalski (In re Kowalski)*, 316 B.R. 596 (Bankr. E.D.N.Y. 2004).

19

The record keeping requirement of section 727(a)(3) has been broadly construed. The debtor is not required to maintain an impeccable system of bookkeeping; rather, a debtor may satisfy the requirement if "the books and records are kept . . . so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business." *Emerson v. Stephenson (In re Emerson)*, 244 B.R. 1, 25 (Bankr. D.N.H. 1999) (citations omitted). *See also Turner v. Tran (In re Tran)*, 297 B.R. 817, 835 (Bankr. N.D. Fla. 2003); *Phillips v. Nipper (In re Nipper)*, 186 B.R. 284, 289 (Bankr. M.D. Fla. 1995) (a full accounting of every transaction is not required so long as the debtor maintains "some written records from which present and past financial condition of debtor may be ascertained with substantial completeness and accuracy.").

The court has broad discretion in determining whether a debtor's failure to maintain records was reasonable, and such determinations should be based on all circumstances of the case. *McBee v. Sliman (Matter of Sliman)*, 512 F.2d 504, 506 (5th Cir. 1975); *The Cadle Co. v. Leffingwell (In re Leffingwell)*, 279 B.R. 328, 355-56 (Bankr. M.D. Fla. 2002). In determining reasonableness courts should look at, *inter alia*, the type of person and business involved. *See Colonial Bank, et al. v. Wynn (In re Wynn)*, 261 B.R. 286, 304 (Bankr. M.D. Ala. 2001) (factors to consider include "debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist.").

The Plaintiffs have the burden to show that Mrs. Savage does not have adequate books and records evincing her financial condition and business transactions. Since this Court has concluded there is insufficient evidence to implicate Mrs. Savage in her husband's business dealings Mrs. Savage cannot be expected to produce records from those businesses or account

20

for their assets.   Mrs. Savage should, however, be able to account for her family's finances since she testified that her husband would give her money to pay the household bills.   Plaintiffs' counsel questioned Mrs. Savage at length regarding the checks she received from her husband that were deposited into her various accounts.   Mrs. Savage testified that she used the funds to pay family expenses of $26,000 per month.   Counsel also questioned Mrs. Savage as to the checks she received from the sales of her jewelry but the questioning focused on her  failure to include the transfers on the filed SOFA, not with the use of or location of the proceeds.   The Plaintiffs received records from at least some of Mrs. Savage's accounts which would show either where funds she received were spent, or that there were withdrawals she could not account for.   If there were any particular sums that Mrs. Savage could not account for they were not sufficiently brought to the attention of this Court.[17]   Other than tax returns, Plaintiffs did not indicate that there were records that they sought but did not receive.   As to the returns, Mrs. Savage indicated that they had not yet been prepared.    This Court must conclude from the evidence before it that the Plaintiffs have not met their burden of establishing that Mrs. Savage should be denied a discharge under section 727(a)(2)(3).

**11 U.S.C. § 727(a)(4)**

Section 727(a)(4) provides:

(a) The court shall grant the debtor a discharge, unless--
. . .
    (4) the debtor knowingly and fraudulently, in or in connection with the case--
        (A) made a false oath or account;
        (B) presented or used a false claim;

---

[17] As discussed previously, Plaintiffs' counsel questioned Mr. Savage as to the whereabouts of the $350,000 that remained unaccounted for out of a $1,000,000 deposit into one of Mrs. Savage's accounts.  *See* n.13.  Mr. Savage testified he did not recall where the money went.  Although the Court is curious as to the location or disposition of the funds, being mindful that evidence is to be construed against the party objecting to discharge, the Court cannot conclude that Mrs. Savage cannot account for the $350,000 when she was not sufficiently questioned as to the location or disposition of the asset.  Although it appears that Mr. Savage cannot account for the money, there is no pending section 727(a)(3) count as to him.

21

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

11 U.S.C. § 727(a)(4). Although the Plaintiffs do not specifically state that they seek denial of discharge under subsection (A) of section 727(a)(4), it is apparent from the allegations in the Complaint and the arguments made at trial that section 727(a)(4)(A) is the basis of their objection. To be successful, the Plaintiffs must prove "(1) the debtor made a statement under oath; (2) that statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Dereve*, 381 B.R. at 334. For the purposes of § 727(a)(4)(A), a debtor's schedules constitute an oath. *In re Grondin*, 232 B.R. 274, 276 (1st Cir. B.A.P. 1999) ("A debtor's Schedules. . . are unsworn declarations made under penalty of perjury and are, according to federal law, the equivalent of a verification under oath"). "Deliberate omissions from schedules or the statement of financial affairs may also constitute false oaths or accounts." *Dereve*, 381 B.R. at 334 (citing *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *Chalik*, 748 F.2d at 618). Whether a subsequent amendment of the schedules will cure a false statement on the original schedules depends upon the circumstances. *In re Green*, 268 B.R. 628, 648 (Bankr. M.D. Fla. 2001). *See also Trustee v. Gardner (In re Gardner)*, 344 B.R. 663, 667 (Bankr. M.D. Fla. 2006) ("It is well established that if the original information is tainted and would be a sufficient bases to find false oath a subsequent amendment would not cleanse the initial taint."). Fraudulent intent "refers to the misrepresenter's knowledge of the untrue character of his or her representations." *In re Digital Resource, LLC*, 246 B.R. 357, 367 (8th Cir. B.A.P. 2000). "Fraudulent intent is, in essence, dishonesty or bad faith." *Id*. "Fraudulent intent

22

has also been characterized as intent to 'deceive' or 'mislead.'" *Id.* (quoting *M.H. v. Caritas Family Servs.* 488 N.W.2d 282, 289 (Minn.1992)). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618.

In *Dereve*, the court set out a clear and concise explanation of the importance of preparing accurate schedules and the consequences of failing to do so:

> The veracity of a debtor's bankruptcy petition, including the schedules and statement of financial affairs, is essential to the successful administration of the debtor's case. *Crews v. Stevens (In re Stevens)*, 250 B.R. 750, 754 (Bankr.M.D.Fla.2000). "Therefore, submissions must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.'" *Id.* (quoting *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992)). A debtor coming before the bankruptcy court must come clean and make full disclosure of all information relevant to the administration of his or her case. *Heidkamp v. Grew (In re Grew)*, 310 B.R. 445, 450–51 (Bankr.M.D.Fla.2004). It is not for the debtor to decide what is and is not relevant. *Id.* at 451. A debtor who omits important information and fails to make full disclosure, places his or her right to discharge in serious jeopardy. *Id.* While an isolated omission may be attributed to oversight, a pattern of omissions clearly warrants the conclusion that the omissions from the SOFA and the schedules were made with the requisite fraudulent intent. *Id. See Grew*, 310 B.R. at 451 (incomplete, improper, or incorrect information in the debtor's schedules or statement of financial affairs may sometimes be forgiven if the debtor is not represented by an attorney or is unsophisticated). When there is a pattern of omissions, it is logical to conclude the debtor did in fact make a false oath in connection with the case. *See* [*Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879, 883 (Bankr. N.D. Fla. 1993)].

*Dereve*, 381 B.R. at 335.

The first element, that the debtor made a statement under oath, has been easily satisfied since the Debtors filed the Schedules and SOFA. The second element, that the statement made under oath was false, has been satisfied as well. Mrs. Savage testified as to numerous omissions from the SOFA that should have been included. To begin, neither the money Mrs. Savage received from the transfers of jewelry to Isbell Jewelers and

23

Tarrytown nor the transfers themselves were disclosed on the filed SOFA. The only reason for the omission given by Mrs. Savage was the hasty preparation of the Schedules. No credible or justifiable explanation was provided as to why they were not prepared more carefully or more thoroughly. Further, given Mrs. Savage's education and field (accounting), one could and would expect her to be thorough and especially pay attention to dollar amounts, numbers, income, and expenses. The rental income from the Mill Creek Circle property was not disclosed, according to Mrs. Savage, because the income was offset by the debt; however, despite the offset, the debt itself was included in the Debtors' Schedule J. Mrs. Savage explained that the debt was included because their tenants were moving out of the property and the Savages moving in. Undoubtedly the debt should have been disclosed on Schedule J whether the Savages or the tenants occupied the property. The fact that the tenants were moving out and the Savages losing the rental income does not excuse their failure to disclose the rental income they had received within the two years leading up to their bankruptcy filing. The most glaring omission from the Schedules and SOFA are the checks made payable to Mrs. Savage from Mr. Savage's businesses that were deposited into Mrs. Savage's bank accounts and used to pay the family's expenses. Had the amounts been small or insignificant perhaps the omission could be viewed as an oversight. But if Mrs. Savage received sufficient funds to pay expenses exceeding $20,000 per month, she should have disclosed the source of those funds that allowed her in turn to pay those expenses. All of these omissions constitute false oaths or accounts for purposes of section 727(a)(4)(A).

The third and fourth elements, that the debtor knew the statement was false and made the statement with fraudulent intent, have been established as well. As noted in

24

*Grew*, the pattern of omissions warrants the conclusion that the Savages acted with the intent to deceive or mislead their creditors. Mrs. Savage testified that she prepared the schedules in a hurry - the Court again notes she did not explain why she was not more attentive - and she claimed that, as a non-attorney, she did not know what information should have been included. However, the Savages were represented by highly-competent bankruptcy counsel at all times who could have cleared up any confusion or misunderstanding the Savages had about the SOFA. Mrs. Savage, a CPA, is extremely well-educated with a background in business and finance. Mr. Savage is a savvy businessman himself. It is implausible that the Savages reported their family's income as $0 in 2012 and $80,000 in 2013 (and meanwhile, as noted, their expenses exceeded $20,000 per month) with a good-faith belief that since the SOFA used the word "income" it was not necessary to disclose the receipt of thousands of dollars of "distributions" used for their personal benefit. As a CPA and a businessman, the Savages had to know that they should show the source of the money they used to meet their expenses. The game of semantics played by the Savages necessitated that the Plaintiffs go through the trouble and expense of "digging out" information that should have been disclosed. That Mrs. Savage claimed to have revised the SOFA after Plaintiffs engaged in discovery makes no difference. The revised SOFA was never filed but even if it had been, the revisions made after the Savages' omissions were discovered would not have cured the false statements on the original SOFA. *See Green*, 268 B.R. at 648; *Gardner*, 344 B.R. at 667. The fifth element, that the false statement materially relate to the bankruptcy case, has been satisfied as few things are more relevant in bankruptcy than a debtor's income and assets and the disposition thereof. The Plaintiffs have met their burden of proving the elements

Case 14-00060-TOM    Doc 48    Filed 03/04/16    Entered 03/04/16 14:55:58    Desc Main
                    Document      Page 25 of 27

of section 727(a)(4)(A). Therefore, Mrs. Savage's discharge is due to be denied pursuant

to section 727(a)(4).

**11 U.S.C. § 727(a)(5)**

Section 727(a)(5) provides that a debtor's discharge may be denied if "the debtor has

failed to explain satisfactorily, before determination of denial of discharge under this paragraph,

any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5).

To succeed under this subsection, a plaintiff must first establish that the debtor had certain,

identifiable assets prior to the filing date and that the debtor no longer has those assets. Once

proven, the burden shifts to the debtor to satisfactorily explain the loss of those assets. *See, e.g.*

*Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 248 (11th Cir. 1995) (holding that

the objecting party has the initial burden of proof, but thereafter the burden shifts to the debtor to

satisfactorily explain the loss of assets pursuant to § 727(a)(5)). "The debtor's explanation for

the loss of assets does not have to be meritorious, but it must at least 'satisfy the bankruptcy

judge that the debtor has not hidden or improperly shielded assets.'" *Nate B. and Francis*

*Spingold Foundation v. Halperin (In re Halperin)*, 215 B.R. 321, 333 (E.D. N.Y. 1997) (quoting

*First Am. Bank v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 33 (Bankr. E.D.N.Y. 1994)); *see*

*also Barristers Abstract Corp. v. Caulfield (In re Caulfiled)*, 192 B.R. 808, 821 (Bankr. E.D.

N.Y. 1996). What constitutes a "satisfactory" explanation is left to the discretion of the court.

*Olson et al. v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988). Section 727(a)(5)

does not provide a limit for how far back in time a plaintiff may claim that a debtor cannot

explain the loss of assets, but courts have held that the debtor must have had an interest in the

property "not too far removed in time" from the bankruptcy filing date. *Neilson v. Laing (In re*

*Laing)*, 329 B.R. 761, 773-74 (Bankr. M.D. Fla. 2005); *see also Hawley*, 51 F.3d at 249 n.1

26

(11th Cir. 1995) (noting that neither section 727(a)(5) nor *Chalik* require that a loss of assets be "within a year's time").

The Plaintiffs have not established that Mrs. Savage had any particular, identifiable asset that she cannot account for with a satisfactory explanation.[18]  She explained that the checks identified by Plaintiffs that she received from her husband were used to pay monthly expenses. She testified that she sold pieces of jewelry to Isbell Jewelers and Tarrytown but she was never really asked what she did with the proceeds.  There were no other assets identified for which Mrs. Savage was asked to account but could not do so.  The Court is thus compelled to rule in favor of Mrs. Savage on this count.  Mrs. Savage's discharge is not due to be denied pursuant to section 727(a)(5).

## CONCLUSION

The Plaintiffs did not establish that any debt owed to them by Mrs. Savage should be nondischargeable under section 523.  They did, however, establish that the Debtors made false oaths or accounts on their Schedules and SOFA for purposes of section 727(a)(4)(A).  Because the adversary proceeding was settled as to Mr. Savage prior to trial, the section 727(a)(4)(A) count is pending only as to Mrs. Savage;  therefore, Mrs. Savage's discharge is due to be denied under section 727(a)(4)(A).  A separate order and judgement consistent with this Memorandum Opinion shall be entered.

Dated: March 4, 2016                          /s/ Tamara O. Mitchell
                                              TAMARA O. MITCHELL
                                              United States Bankruptcy Judge


TOM/dgm

---

[18] *See* n.15  and n.17 herein.

Case 14-00060-TOM    Doc 48    Filed 03/04/16    Entered 03/04/16 14:55:58    Desc Main
Document      Page 27 of 27